```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MICHAEL S. SELTZER,                   : 09 Civ. 9115 (BSJ) (JCF)
                                      :
            Plaintiff,                : MEMORANDUM
     -against-                        : AND ORDER
                                      :
OMNI HOTELS,                          :
                                      :
            Defendant.                :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This is a personal injury action arising out of an accident that occurred in a hotel in San Diego, California. Defendant Omni Hotels Management Corporation[1] ("Omni") has moved pursuant to 28 U.S.C. § 1404(a) to transfer the case to the United States District Court for the Southern District of California. For the reasons set forth below, the motion is granted.

Background

Michael S. Seltzer was injured while attending a meeting at the San Diego Omni Hotel on November 12, 2008. (Affirmation of Thomas G. Darmody dated June 18, 2010 ("Darmody Aff."), ¶¶ 3, 6; Affirmation of Mitchell J. Carlinsky dated July 28, 2010 ("Carlinsky Aff."), ¶¶ 3, 6). Mr. Seltzer claims that he fell from the rear portion of a stage, which had been set up in a conference room, because a curtain obscured the edge of the stage. (Carlinsky Aff., ¶ 7). He further alleges that there was no railing or other safety measure in place that might have prevented his fall. (Carlinsky Aff., ¶ 7).

---

[1] The defendant is incorrectly identified in the Complaint as "Omni Hotels."

1

Mr. Seltzer is a citizen of New York State, residing in New York City. (Complaint, ¶ 3). The Omni San Diego Hotel is owned by the San Diego Ballpark Company, LLC, a Delaware limited liability company, and managed by Omni, a Delaware corporation with its principal place of business in Irving, Texas. (Darmody Aff., ¶ 5).

On October 29, 2009, Mr. Seltzer filed his action in this court, asserting jurisdiction based on diversity. Thereafter, Omni moved pursuant to 28 U.S.C. § 1404(a) to transfer venue to the Southern District of California.

Discussion

    A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Congress intended § 1404(a) "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26, 27 (1960)).

"[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992); accord ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 546-47 (S.D.N.Y. 2008); Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998). The party requesting a transfer bears a "heavy burden to establish that the

2

interests of convenience and fairness will be better served by transfer to another forum." Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645, 2003 WL 22244587, at *1 (S.D.N.Y. Sept. 30, 2003).

The inquiry regarding a motion to transfer is two-fold. First, the court must determine whether the action could have been brought in the transferee court. See In re Nematron Corp. Securities Litigation, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998). Second, the court must decide whether a transfer is appropriate, considering "the convenience of parties and witnesses and [] the interest of justice." Id. (internal quotation marks omitted).

B.  Proper Venue

A civil action based on diversity jurisdiction may be brought in a venue "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(a)(2). "An action 'could have been brought' in another forum if the defendant would have been amenable to personal jurisdiction in the transferee forum at the time the action was commenced and venue is proper there." Dostana Enterprises LLC v. Federal Express Corp., No. 00 Civ. 747, 2000 WL 1170134, at *2 (S.D.N.Y. Aug. 16, 2000) (quoting Bionx Implants, Inc. v. Biomet, Inc., No. 99 Civ. 740, 1999 WL 342306, at *2 (S.D.N.Y. May 27, 1999)). Here, Omni asserts, and Mr. Seltzer does not dispute, that venue is proper in the Southern District of California. (Carlinsky Aff., ¶ 9). The events giving rise to Mr. Seltzer's claims took place there. Furthermore, Omni concedes that it is subject to personal jurisdiction in that district. (Affirmation of Thomas G.

3

Darmody dated Aug. 6, 2010 ("Darmody Reply Aff."), ¶ 4). Therefore, the only remaining question is whether transfer is appropriate on the grounds of convenience. Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001).

    C.    Appropriateness

When determining the appropriateness of a transfer, courts generally consider several factors, including (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; and (7) the relative means of the parties. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006). In addition, courts in the Southern District of New York sometimes take into account the familiarity of the courts with the governing law and trial efficiency. See Guccione, 2009 WL 2337995, at *6; ESPN, 581 F. Supp. 2d at 547; Nematron, 30 F. Supp. 2d at 400; Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998); Constitution Reinsurance Corp. v. Stonewall Insurance Co., 872 F. Supp. 1247, 1250 (S.D.N.Y. 1995). In sum, the moving party must demonstrate that the requested transfer is in the "best interests" of the litigation. I will address each relevant consideration in turn.

    1.    Convenience of Witnesses

Typically, the convenience of the witnesses is "the most important factor" when determining whether transfer should be

4

granted. Truk International Fund v. Wehlmann, No. 08 Civ. 8462, 2009 WL 1456650, at *3 (S.D.N.Y. May 20, 2009). Further, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." Indian Harbor Insurance Co. v. Factory Mutual Insurance Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). When weighing this factor, a court "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." Herbert Ltd. Partnership v. Electronic Arts, Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Thus, generally, the moving party must "specifically list the evidence and witnesses on which the party intends to rely . . . , along with a general statement of the topics of each witness' testimony." Editorial Musical Latino Americana, S.A. v. Mar International Records, Inc., 829 F. Supp. 62, 66-67 (S.D.N.Y. 1993). However, "[a] party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness." G. Angel Ltd. v. Camper & Nicholsons USA, Inc., No. 06 Civ. 3495, 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008). In many ways, the analysis of convenience to witnesses, like that concerning the availability of process to compel testimony from unwilling witnesses, "boils down to . . . in which forum would the trier of fact have the benefit of live testimony from more of the significant witnesses." Schechter v. Tauck Tours, Inc., 17 F. Supp. 2d 255, 261 (S.D.N.Y. 1998).

Here, neither party has provided a detailed list of its potential witnesses. However, Omni has provided the signed affidavit of Brian Hughes, the General Manager of the hotel where the fall occurred. (Affidavit of Brian Hughes dated May 17, 2010

5

("Hughes Aff."), attached as Exh. C to Darmody Aff., ¶ 1). In his affidavit, Mr. Hughes states that the employees who set up the stage and the meeting room are all Omni San Diego Hotel employees residing in the San Diego area. (Hughes Aff., ¶ 2). In addition, the hotel's head of security, Lars Renteria, who investigated the incident, and the hotel manager, Colleen Cronin, both live in San Diego. (Hughes Aff., ¶ 3). These Omni witnesses are likely to be some of the most significant, providing testimony material to the alleged negligence. Their convenience, and the court's ease of access to their testimony, are important considerations in the analysis. Furthermore, another California-based company, Advanced Planning Services, Inc., organized and ran the meeting that Mr. Seltzer was attending in the hotel conference room when he was injured. (Hughes Aff., ¶ 1; Darmody Aff., ¶ 7).[2] As employees of Advanced Planning Services are non-party witnesses who are likely to offer key evidence, their convenience and availability to give live testimony also weigh significantly in favor of transfer.

On the other hand, Mr. Seltzer suggests that the New York-based physicians who will testify about the nature and extent of his injuries will be inconvenienced if venue is transferred to California. (Carlinsky Aff., ¶ 16). However, "the convenience of expert witnesses is of little or no significance on a motion to transfer." <u>Wibau, Westdeutsche Industrie v. American Hoist &</u>

---

[2] Omni also asserts that "those in attendance at the meeting were also residents of California." (Darmody Aff., ¶ 7). However, Omni has not provided specific information as to any attendee, or any details about the nature of the meeting that would suggest that the attendees were California residents. To the contrary, this Court has information about only one -- Mr. Seltzer -- who is a resident of New York City.

6

Derrick Co., 293 F. Supp. 273, 275 (S.D.N.Y. 1968) (internal quotation marks omitted); see also Kingsepp v. KMart Corp., No. 96 Cv. 5167, 1997 WL 269582, at *2 (E.D.N.Y. May 5, 1997) (denying motion to transfer in personal injury action where all witnesses aside from plaintiff and her expert witnesses resided in transfer state). In addition, depositions or video recordings of their testimony can convey the physicians' conclusions about the extent and nature of Mr. Seltzer's injuries. By contrast, live testimony from those who were present at and in charge of setting up the premises where Mr. Seltzer fell will be key to determining whether Omni was negligent. Since the probable value of live testimony from California-based witnesses outweighs that of New York-based witnesses, their convenience is more significant in the analysis. Thus, this factor weighs in favor of transfer.

　　2. Convenience of the Parties

"The convenience of the parties factor does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other." Dostana, 2000 WL 1170134, at *4. Mr. Seltzer lives in New York City, and it may be presumed that litigating in California would present a burden. At the same time, as a corporation doing business in San Diego, it may be presumed that Omni would find the Southern District of California to be a more convenient forum. Nevertheless, neither party has asserted that litigating in the alternate venue would be inconvenient. Therefore, transferring the case to California would merely shift any inconvenience from Omni to Mr. Seltzer. Thus, this factor is neutral.

### 3. Location of Relevant Documents and Access to Proof

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." ESPN, 581 F. Supp. 2d at 548. Furthermore, "the location of documents is entitled to little weight unless [a] defendant makes a 'detailed showing of the burden it would incur absent transfer.'" Indian Harbor, 419 F. Supp. at 402 n. 2 (quoting Royal Insurance Co. of America v. Tower Records, Inc., No. 02 Civ. 2612, 2002 WL 31385815, at *6 (S.D.N.Y. Oct. 22, 2002)). In this case, the location of relevant documents does not weigh in the analysis. Neither party has indicated that transmitting relevant documents would be burdensome. However, the premises, and likely other sources of proof, such as the stage at issue, are located in California and are more readily accessible there. Thus, this factor weighs in favor of transfer.

### 4. Locus of Operative Facts

The "locus of operative facts" has been interpreted as the place where events and actors material to proving liability are located. See TouchTunes Music Corp. v. Rowe International Corp., 676 F. Supp. 2d 169, 175 (S.D.N.Y. 2009) (defining "locus of operative facts" as place where events material to liability occurred and where related actors reside and work); 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994) (describing the locus of operative facts as "site of the events from which the claim arises"). "The location of operative events underlying an action is a primary factor in determining a motion to transfer venue." Dostana, 2000 WL 1170134,

at *4 (internal quotation marks omitted).  Therefore, "[c]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." Nematron, 30 F. Supp. 2d at 404.

In certain respects, analysis of this factor is duplicative of the analyses of other factors, especially convenience to witnesses and the relative ease of access to sources of proof.  See Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989-90 (E.D.N.Y. 1991) (explaining that consideration of the "locus of operative facts" takes into account relative ease of access to sources of proof). Nevertheless, the Second Circuit has identified the locus of operative facts as a separate consideration.  See D.H. Blair, 462 F.3d at 107.

Here, the principal events giving rise to Mr. Seltzer's claims occurred in California.  In addition, New York has no material connection to the operative facts, other than that Mr. Seltzer has received care in New York for the injuries he sustained in California.  Thus, this factor weighs in favor of transfer.

     5.   The Availability of Process to Compel Testimony

In order for this factor to have any bearing, the parties must demonstrate that their proposed non-party witnesses would be unwilling to testify in the alternate forum.  See Schwartz v. Marriott Hotel Services, Inc., 186 F. Supp. 2d 245, 250 (E.D.N.Y. 2002); Brozoski v. Pfizer Inc., No. 00 Civ. 4215, 2001 WL 618981, at *4 (S.D.N.Y June 6, 2001); Westwood Ventures, Ltd. v. Forum Financial Group, No. 97 Civ. 514, 1997 WL 266970, at *5 (S.D.N.Y. May 19, 1997).  Absent such a showing, "this factor weighs

neutrally in the transfer analysis." Morgan Guaranty Trust Co. of New York v. Tisdale, No. 95 Civ. 8023, 1996 WL 544240, at *7 (S.D.N.Y. Sept. 25, 1996). Here, although Mr. Seltzer asserts that his medical witnesses all reside and work in New York (Carlinsky Aff., ¶ 12), he has not demonstrated that these or any other potential witnesses would be unwilling to testify in California. Likewise, Omni has not asserted that any of its witnesses would be unwilling to testify in New York. Thus, this factor is neutral.

### 6. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." Nematron, 30 F. Supp. 2d at 405. However, "the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the . . . events allegedly underlying the claim . . . ." Id.; accord Adair v. Microfield Graphics, Inc., No. 00 Civ. 629, 2000 WL 1716340, at *3 (S.D.N.Y. Nov. 16, 2000). Conversely, the plaintiff's choice is less significant when the operative facts have little or no connection with the chosen forum. Morgan Guaranty Trust, 1996 WL 544240, at *8.

In this case, Mr. Seltzer's choice of forum is entitled to little deference because New York has no relationship to the operative facts giving rise to his claims. Instead, the facts pertinent to whether Omni was negligent arose in the Southern District of California. Thus, this factor does not weigh significantly in the analysis.

10

7. <u>Relative Means of the Parties</u>

The relative means of the parties may be considered if a disparity in resources exists, such as where an individual plaintiff sues a large corporation. <u>Nematron</u>, 30 F. Supp. 2d at 405. However, a party arguing for or against transfer on these grounds "must offer documentation to show that transfer . . . would be unduly burdensome to his finances." <u>Dostana</u>, 2000 WL 1170134, at *4 (internal quotation marks and citation omitted).

Here, while Mr. Seltzer is an individual suing a corporation that may possess considerably greater assets, he has not shown that litigating this action in California would impose an undue financial hardship. Mr. Seltzer asserts that it will be "cost prohibitive" to transport his New York-based physicians to California (Carlinsky Aff., ¶ 12), yet he does not provide any specific support for this contention, such as how many physicians he intends to call, or how much more he thinks litigating in California will cost him. In addition, Mr. Seltzer does not address the possibility that physician testimony could be adequately presented in deposition or video format. Accordingly, this factor tilts in Mr. Seltzer's favor, but only slightly.

8. <u>Familiarity with the Governing Law</u>

Because Mr. Seltzer has brought a tort claim based on diversity, if litigation were to proceed here, this Court would apply New York's choice-of-law rules. In tort claims, New York courts conduct an "[i]nterest analysis," a "'flexible approach intended to give controlling effect to the law of the jurisdiction which . . . has the greatest concern with the specific issue raised

11

in the litigation.'" Finance One Public Co. v. Lehman Brothers Special Financing, Inc., 414 F.3d 325, 336 (2d Cir. 2005) (quoting Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922 (1993)). Therefore, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Cooney, 81 N.Y.2d at 72, 595 N.Y.S.2d at 922; see Curley v. AMR Corp., 153 F.3d 5, 15 (2d Cir. 1998)(applying law of the place where tortious conduct occurred, in accordance with New York law). Mr. Seltzer fell and sustained his injuries in the Omni San Diego Hotel; thus the Southern District of California is the "place of the tort." Since it is presumed that a federal court in a particular forum has greater familiarity with the law of the state in which it sits than does a court in a foreign state, Dostana, 2000 WL 1170134, at *6, this factor weighs in favor of transfer to the Southern District of California.

        9.   Trial Efficiency and the Interests of Justice

Finally, a district court has discretion to transfer an action to the venue where the trial would be most expedient and just. Nematron, 30 F. Supp. 2d at 407. Thus, for example, the "docket conditions of the transferor and transferee courts . . . are relevant" to [a] transfer determination. Id. at 407 (internal quotation marks and citation omitted). Here, Omni has presented a "Judicial Caseload Profile" for each district, current through 2009, indicating that the docket of the Southern District of New York is significantly more congested than that of the Southern District of California, with a relatively higher number of pending

12

cases over three years old. (Darmody Aff., ¶ 27; Judicial Caseload Profiles for the Southern District of New York and the Southern District of California, attached as Exhibit D to Darmody Aff.). However, although the docket in the Southern District of New York is congested, it is not clear that transfer would "meaningfully affect" judicial economy. See Dostana, 2000 WL 1170134, at *7. In fact, the median time period from filing to trial for civil actions in each district is nearly identical, about thirty-two months, and the median time period from filing to disposition is similar in both districts. Thus, this factor is neutral.

Conclusion

Based on the information presented by the parties, Omni has met is burden under 28 U.S.C. § 1404(a) by demonstrating that transfer is in the "best interests" of the litigation. The plaintiff's choice of forum and the relative means of the parties tip slightly in Mr. Seltzer's favor, despite the fact that he has not addressed whether litigation would pose an undue financial hardship with sufficient particularity. However, considerations of convenience to witnesses, the locus of operative facts, relative ease of access to sources of proof, and the presumption that courts in the Southern District of California have greater familiarity with California law, lead me to conclude that transfer to the Southern District of California is appropriate. Therefore, the Clerk of the Court is respectfully requested to effect the transfer

and close this case.

                        SO ORDERED.

                    */s/ James C. Francis IV*
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
            September 30, 2010

Copies mailed this date to:

Mitchell J. Carlinsky, Esq.
Carlinsky, Dunn & Pasquariello, PLLC
8 Duffy Avenue
Hicksville, New York 11801

Thomas G. Darmody, Esq.
Mintzer, Sarowitz, Zeris, Ladva & Meyers, LLP
39 Broadway, Suite 950
New York, New York 10006

14